IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

CHRISTOPHER STOUFFLET,
TROY SOBERT,
VLADIMIR ANDRIES, M.D.,
STEVEN DANIEL HOLLIS, M.D.,
AHSAN U. RASHID, M.D. and
ANDRE D. SMITH, M.D.,

Defendants.

CRIMINAL CASE NO.

1:06-CR-0337-CC-JFK

## ORDER AND REPORT AND RECOMMENDATION

Pending before the court are various motions filed by one or more Defendants and adopted by co-Defendants seeking to dismiss counts of the Indictment, to obtain grand jury materials and to strike surplusage from the Indictment. The Government has responded opposing the motions. After consideration of the briefs filed in support of and opposition to the motions, and the relevant case law, the court enters the following order and report and recommendation.

AO 72A
(Rev.8/82)

I.      **Motions to Dismiss Drug Conspiracy and Distributing/Dispensing Counts**[1]

Defendants filed various motions to dismiss the drug charges in the indictment contending that the charges fail to state an offense, pursuant to Fed. R. Crim. P. 12(b)(2), and that their Due Process rights are being violated.  Defendants contend that the Government seeks to hold them criminally liable for violations of federal and state regulations not for federal statutory crimes; that the federal regulation at issue, 21 C.F.R. § 1306.04(a), as well as the federal drug laws, are void-for-vagueness as applied in this case and fail to provide adequate notice to Defendants of the conduct subject to criminal penalties; and that Congress did not intend to apply criminal drug penalties to the conduct charged in this case, did not intend to apply criminal penalties to violations of federal and state regulations governing the practice of medicine, and did not intend to delegate the authority to the Attorney General to implement and enforce § 1306.04(a).  [Docs. 79, 93, 96, 104, 113, 135, 152, 153].[2]  The Government opposes

---

[1]Although the motions to dismiss directly attack the charges brought pursuant to 21 U.S.C. §§ 841 and 846, Counts One through Four, the money laundering charges, Counts Five through Thirty-One, are subject to dismissal as being dependent on the drug charges.  [Doc. 96 at 25].

[2]Defendants Stoufflet [Doc. 96], Rashid [Doc. 79] and Smith [Doc. 93] filed motions to the dismiss the drug counts in the indictment which were adopted by motion by one of more of their co-Defendants.  The court further advised counsel for all Defendants that formal motions to adopt these motions were not required and that

2

the motions to dismiss relying on well-established legal precedent and authority which has considered and rejected the arguments raised by Defendants in this case.  [Doc. 149].  After consideration of the charges as set forth in the indictment, arguments of counsel, and legal precedent and authority, the court finds that Defendants' contentions lack merit.

a.      **The Indictment**

Defendants Christopher Stoufflet and Troy Sobert, who are not registrants as defined in the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.*, are charged along with Vladimir Andries, M.D., Thu Anh Hoang, M.D., Steven Daniel Hollis, M.D., Ahsan U. Rashid, M.D., and Andre D. Smith, M.D., who are registrants within the meaning of the CSA, in Count One of the Indictment with a violation of 21 U.S.C. § 846:  conspiring with one another and others to violate the CSA.  [Doc. 1, Count One, p. 14].   The Indictment specifically alleges in pertinent part that Defendants committed the offense, from on or about July 2001, through on or about December 2003, by knowingly and intentionally conspiring and agreeing together "to distribute and dispense Schedule III and IV controlled substances . . . other than for a

the motions would be treated as adopted by all Defendants absent a Defendant opting out of the motion.  No Defendant opted out; therefore, the motions to dismiss are applicable to all named Defendants.

3

legitimate medical purpose, and not in the course of professional practice, in violation of Title 21, United States Code, Sections 841(a)(1) . . . and Title 21, Code of Federal Regulations, Section 1306.04. . . ."  [Doc. 1, Count One, ¶ 26].

The Indictment provides background information about the controlled substances involved and about the CSA and other rules, regulations and laws, which the Government alleges are relevant to charged drug offenses.  [Doc. 1, Count One, ¶¶ 1-17].   Count One further identifies Defendants and their alleged roles in the conspiracy.  Defendants Stoufflet and Sobert are alleged to be the owners, operators and corporate officers of various businesses "that operated websites through which the defendants distributed and dispensed controlled substances and other prescription drugs. . . ."  From November 2002, through December 2003, Defendant Andries, a physician licensed in the State of New York, is alleged to have authorized his name to appear on vials of drugs, involving at least 33,400 (1000 Schedule III and 17,500 Schedule IV) prescriptions, distributed and dispensed by Defendants to customers of the internet businesses.  From June 2002, through November 2002, Defendant Hoang, a physician licensed in the State of Texas, is alleged to have authorized her name to appear on vials of drugs, involving at least 16,500 (142 Schedule III and 7,000 Schedule IV) prescriptions, distributed and dispensed by Defendants to customers of

4

the internet businesses. From August 2001, through August 2002, Defendant Hollis, a physician licensed in the State of Georgia, is alleged to have authorized his name to appear on vials of drugs, involving at least 43,390 (639 Schedule III and 26,000 Schedule IV) prescriptions, distributed and dispensed by Defendants to customers of the internet businesses. From October 2002, through February 2003, Defendant Rashid, a physician licensed in the State of California, is alleged to have authorized his name to appear on vials of drugs, involving at least 12,000 (190 Schedule III and 8,000 Schedule IV) prescriptions, distributed and dispensed by Defendants to customers of the internet businesses. And, from April 2002, through November 2003, Defendant Smith, a physician licensed in the State of Michigan, is alleged to have authorized his name to appear on vials of drugs, involving at least 65,000 (1750 Schedule III and 39,800 Schedule IV) prescriptions, distributed and dispensed by Defendants to customers of the internet businesses. [Doc. 1, Count One, ¶¶ 18-24].

The Indictment also sets forth the manner and means by which the Government contends that the conspiracy was carried out by Defendants. According to the Indictment, using various websites, Defendants illegally dispensed controlled substances over the internet using an online ordering process. Customers filled out the order form and "chose the type, quantity, and dosage of the controlled substance the

5

customer wished to purchase."  Questions were also answered regarding medical conditions; however, no one associated with Defendants checked the accuracy of the information provided.  Customers provided credit card information with submission of the order form.  Customers, who lived across the United States, had no face-to-face contact with physicians who, per the website, were to review the order forms (usually the only contact with a customer) and determine whether to dispense the drugs.  The Indictment further alleged that from July 2001, through December 2003, at least 260,000 (5,600 Schedule III and 150,000 Schedule IV) prescriptions, authorized by the named physicians, through the internet application process, were issued and that the businesses generated sales in excess of $75,000,000.  [Doc. 1, Count One, ¶¶ 27-38].

In Counts Two through Four of the Indictment, which incorporated by reference the preceding paragraphs, identified Defendants are charged with a violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2, and 21 C.F.R. § 1306.04.  The Indictment charges that, aided and abetted by each other, Defendants "knowingly and intentionally, distributed and dispensed, and caused to be distributed and dispensed, a quantity of a controlled substance for other than a legitimate medical purpose and not in the usual course of professional practice. . . ."  [Doc. 1, Counts Two-Four, ¶ 40].  Defendants

6

Stoufflet and Sobert are charged in Counts Two through Four; Defendant Andries is charged in Count 3; and Defendant Smith is charged in Counts Two and Four.  [Id.].

### b.   Discussion

As noted, Defendants raise various attacks on the charges contained in Counts One through Four of the Indictment.  Defendants contend that they cannot be charged with violations of the CSA based on the conduct alleged in the Indictment, that they are improperly charged with violating federal and state rules and regulations, that their Due Process rights are violated because the CSA and federal regulations, as applied to them, are void-for-vagueness, and generally, that Congress never intended federal drug laws and penalties to apply to their conduct.  [Docs. 79, 93, 96, 104, 113, 135, 152, 153].  As the Government correctly responds, Defendants make these arguments ignoring decades of Supreme Court and other federal case law, including binding precedent in this circuit, that upholds bringing the charges in this case and that rejects the same arguments raised by Defendants herein.  Although apparently asking this court to ignore or recommend overturning this body of case law, Defendants cite to no legal authority, excepting a recent Supreme Court case, Gonzales v. Oregon, 546 U.S. 243, 126 S. Ct. 904, 163 L. Ed. 2d 748 (2006), which contrary to their assertions, is

7

factually inapposite to the case before this court and does not, even by implication, overrule prior binding Supreme Court and federal court precedent.

A general overview of the legal principles guiding a court's consideration of a pre-trial motion to dismiss an indictment are succinctly set forth by the District Court for the Southern District of Florida in its decision in United States v. Ferguson, 142 F. Supp. 2d 1350 (S.D. Fla. 2000). The court summarized those principles as follows:

> In criminal proceedings, there is no summary judgment mechanism. . . .
> "Nor do the rules provide for a pre-trial determination of sufficiency of
> the evidence." . . . This, of course, is because the resolution of factual
> questions is the sole province of the jury. . . . "Moreover, this court is
> constitutionally barred from ruling on a hypothetical question." . . . A
> motion to dismiss an indictment targeted at the substance of the offense
> may therefore only be granted if there is a legal infirmity in the
> indictment. . . .
>
> Issues which are properly raised, and decided, by a pretrial motion to
> dismiss are those that are "capable of determination without the trial of
> the general issue." . . . "As the language of the rule indicates, when the
> issue raised involves a question that may not be determined without 'trial
> of the general issue' it is not proper for decision by pretrial motion. The
> 'general issue' has been defined as evidence relevant to the question of
> guilt or innocence." . . . If a claim or defense, even a constitutional one,
> implicates the "general issue," the proper procedure is to defer ruling
> until after the prosecution has presented its case. . . .
>
> In sum, the Court's review at this stage of the proceeding is very limited.
> The Court may dismiss the case based upon: (1) a legal infirmity or defect
> in the charging instrument; or (2) a purely legal question, such as a
> determination that the statute is unconstitutional. Any issues that require

8

consideration of the facts underlying this prosecution, however, are not the proper subject of a pretrial motion to dismiss.

Id. at 1353-54 (citations omitted); see also United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) ("There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of the sufficiency of the evidence. . . . The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute."); United States v. Ayarza-Garcia, 819 F.2d 1043, 1048 (11th Cir. 1987) ("It follows that a pretrial motion to dismiss the indictment cannot be based on a sufficiency of the evidence argument because such an argument raises factual questions embraced in the general issue. . . . Rule 12 is not intended to authorize 'speaking motions' through which the truth of the allegations in the indictment are challenged."); United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987) ("Under Fed.R.Crim.P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial."). It is well settled that, when considering a motion to dismiss an indictment, the allegations in the indictment must be taken as true. See Salman, 378 F.3d at 1267-68; Torkington, 812 F.2d at 1354.

9

Additionally, with respect to Defendants' claims that the offenses charged are constitutionally void, "[t]he void-for-vagueness doctrine requires that a penal statute 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'"  United States v. Marte, 356 F.3d 1336, 1342 (11th Cir. 2004).  "The vagueness doctrine was developed by the Supreme Court of the United States as a 'basic principle of due process.'"  United States v. Vaghela, 970 F. Supp. 1018, 1020 (M.D. Fla. 1997) (quoting Grayned v. City of Rockford, 408 U.S. 104, 107, 92 S. Ct. 2294, 2298, 33 L. Ed. 2d 222 (1972)).  "It requires a criminal statute to be 'sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violations.'"  Id. (quoting Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340, 72 S. Ct. 329, 330-31, 96 L. Ed. 367 (1952)).  Because the statutes at issue do not involve First Amendment rights, Defendants' claims of vagueness are evaluated only as the statutes are applied to their actions as charged in the indictment.  See United States v. Starks, 157 F.3d 833, 839 n.9 (11th Cir. 1998); Vaghela, 970 F. Supp. at 1021.

The court will apply these principles to the analysis of the motions to dismiss.

10

In 1975, the United States Supreme Court decided in <u>United States v. Moore</u>, 423 U.S. 122, 96 S. Ct. 335, 46 L. Ed. 2d 333 (1975), that physicians, "registrants" in the CSA, could be charged with criminal conduct pursuant to 21 U.S.C. § 841 when he or she dispenses drugs outside the usual course of his or her professional practice. <u>Id.</u> at 124 & 140-42, 96 S. Ct. at 337 & 344-45.  This issue came to the attention of the Supreme Court because the District of Columbia Court of Appeals broke with a long line of circuit court decisions, construing the statutory language under the Harrison Act, the precursor to the CSA, as well as under § 841, which had held that registrants may be prosecuted under the statute.  <u>See</u> <u>id.</u> at 130 n.7, 96 S. Ct. at 340 n.7.  In reversing the circuit court, the Supreme Court noted that the CSA was enacted to strengthen existing law enforcement authority addressing drug abuse.  Citing legislative history, the Court noted that Congress "was concerned with the nature of the drug transaction, rather than the status of the defendant" and intended the CSA provisions to deal with control of problems related to those in the legitimate distribution chain by making "'transactions outside the legitimate distribution chain illegal'" and intended to impose "severe criminal penalties" on those like the respondent in <u>Moore</u>, "who sold drugs, not for legitimate purposes, but 'primarily for the profits to be derived therefrom.'"  <u>Id.</u> at 134-35, 96 S. Ct. at 342 (citations omitted).

11

In reaching this conclusion, the Supreme Court, again citing to the legislative history, stated, "Congress was particularly concerned with the diversion of drugs from legitimate channels to illegitimate channels.' . . .  It was aware that registrants, who have the greatest access to controlled substances and therefore the greatest opportunity for diversion, were responsible for a large part of the illegal drug traffic." Id. at 135, 96 S. Ct. at 342.  The Court concluded that all of the provisions of the CSA "reflect the intent of Congress to confine authorized medical practice within accepted limits." Id. at 141-42, 96 S. Ct. at 345.  Finally, the Court found that the statute was not ambiguous and that the language of the Act was clear and definite - that is, registrants are subject to prosecution for violations of § 841 if their conduct falls outside of legitimate professional practice.[3] Id. at 145, 96 S. Ct. at 347.  Alleged diversion of controlled substances from legitimate channels of distribution is exactly the type of conduct that Defendants in this case are charged with as constituting violations of §§ 841 and 846. [Doc. 1].

_____

[3]The Supreme Court's decision in Moore also resolves Defendants' contentions, adversely to them, that Congress did not intend for criminal prosecutions or penalties to apply in cases such as charged herein, that is, registrants and non-registrants allegedly conspiring with one another and assisting one another in the diversion of controlled substances from legitimate channels.

AO 72A
(Rev.8/82)

The court has not found any decision, excepting that reversed by the Supreme Court in <u>Moore</u>, that holds to the contrary or, for that matter, that finds application of either § 846 or § 841 to registrants violates due process.  <u>See, e.g.</u>, <u>United States v. DeBoer</u>, 966 F.2d 1066, 1068-69 (6th Cir. 1992) (denying defendant/pharmacist's claim that his due process rights were violated because statute was void-for-vagueness, the court held that "the language in § 841(a)(1) and 21 C.F.R. § 1306.04 clearly defines the pharmacist's responsibilities that give rise to conduct that constitutes an unlawful distribution of a prescription drug"); <u>United States v. Green</u>, 511 F.2d 1062, 1067-69 (7th Cir. 1975) (pre-<u>Moore</u> decision, relying on much of the same legislative history as did the Supreme Court, finding that § 841 is applicable to a registrant who "acts without any legitimate medical purpose and beyond the course of professional practice by selling prescriptions that allow the bearer to obtain controlled substances. . . ."); <u>United States v. Rosenberg</u>, 515 F.2d 190, 196-97 (9th Cir. 1975) (pre-<u>Moore</u> decision finding that § 841 is applicable to registrants and rejecting contention that phrase, "in the course of professional practice," is constitutionally vague, the court noted that the language at issue had been in the statute books since 1914 without any interpretation problems and that the phrase "clearly means that a doctor is not exempt from the statute when he takes actions that he does not in good faith believe are for

13

legitimate medical purposes"); United States v. Collier, 478 F.2d 268, 271-72 (5th Cir.

1973)[4] (pre-Moore decision rejecting contention that § 841 and implementing

regulation prohibiting dispensing other than in the course of professional practice "do

not warn the physician of what conduct is proscribed," the court noted that a registrant

"is not immune from the act solely due to his status, . . . but rather, because he is

expected to prescribe or dispense drugs within the bounds of his professional practice

of medicine" and finding that the statutes are not unconstitutionally vague because of

the fact that determination of what constitutes "bona fide medical practice" must be

made on case-by-case basis); United States v. Lievertz, 2002 WL 31640562, *3 (S.D.

Ind. November 1, 2002) (rejecting the defendant/physician's contention that §

841(a)(1) is void-for-vagueness because a physician looking at the statute cannot

determine what conduct is "outside the scope of professional practice"); United States

v. Sutherland, 2001 WL 497319, *1-2 (W.D. Va. May 10, 2001) (rejecting

defendant/physician's claim that, because determination that accused acted outside the

usual course of professional practice is made on a case-by-case basis, the statutes are

unconstitutionally vague).

---

[4]Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

14

Defendants Stoufflet and Sobert, who are not registrants, also contend that the Indictment fails to state an offense against them and that the statutes and regulation at issue as applied against them are void-for-vagueness.  Defendants offer no authority for their contentions; however, as argued by the Government, non-registrants can be, and have been for many years, charged for the type of conduct alleged in the Indictment to extent they are charged as conspiring with or aiding and abetting registrants.  See, e.g., United States v. Vamos, 797 F.2d 1146, 1153-54 (2nd Cir. 1986) (the court affirmed the conviction of nurse-office manager charged with aiding and abetting and conspiring with her physician-employer to unlawfully dispense drugs, stating, "[w]hile those who assist practitioners in distributing controlled drugs clearly cannot be held to the standard of a reasonable practitioner, they are not free to unreasonably rely on the judgment of their employers[,]" and concluded that "[t]here was ample evidence from which the jury could infer beyond a reasonable doubt that [the nurse-officer manager] could not reasonably fail to know that Dr. Sugar was engaged in unlawful activity and that she intended to help him do so, which is the test"); United States v. Albert, 675 F.2d 712, 715 (5th Cir. 1982) (rejecting contention that registrant and non-registrants cannot conspire to distribute drugs, the court held that non-registrants need not be able to personally dispense drugs, they only have to

15

participate in a conspiracy with a registrant in violation of § 841(a)(1)" and holding that indictment gave adequate notice of charge); United States v. Hicks, 529 F.2d 841, 844 (5th Cir. 1976) (defendant contended that as a security guard, with a fourth grade education, he was legally incapable of dispensing controlled substances, the court held that "[i]t was not necessary that Hicks personally 'dispense,' only that he knowingly participate in a conspiracy with Dr. Young, a licensed physician, to dispense controlled substances in violation of 21 U.S.C. § 841(a)(1)"); United States v. Armstrong, 2007 WL 809509, *4-5 (E.D. La. March 14, 2007) (analyzing aiding and abetting provisions, the court stated that a non-physician can be properly charged with aiding and abetting a physician, and a physician who signed the dispensing order can be charged with aiding and abetting others who assist in the illegal dispensation of drugs"); United States v. Prejean, 429 F. Supp. 2d 782, 804-05 (E.D. La. 2006) (rejecting non-registrants/defendants' contentions that neither § 841 nor § 1306 are applicable to them and finding that neither the CSA nor the regulation are void-for-vagueness as applied to them).

Defendants also make several arguments focusing on the references in the Indictment to "State Laws" and to various state and federal regulations. Defendants argue that by making these references the Government is attempting to convict them

16

of and apply criminal penalties to conduct not chargeable under federal criminal statutes.  As noted by the Government, Defendants misconstrue the nature of the charges in the indictment.  [Doc. 149 at 3-7].  Defendants are charged in Count One, as noted *supra*, with conspiring to violate § 841 and § 1306.04, in violation of § 846. In Count Two, identified Defendants are charged with unlawful dispensing of controlled substances in violation of § 841 and § 1306.04.  [Doc. 1].  They are charged with violating the federal drug statute by unlawfully distributing and dispensing controlled substances, as described by the federal regulation, that is, distributing and dispensing drugs other than for a legitimate medical purpose and not in the usual course of professional practice.  [Id.]. Nothing in the charging instrument seeks to hold Defendants criminally responsible solely for violating civil rules or regulations or to hold Defendants criminally responsible for malpractice, negligence or even reckless conduct.  In fact, the charges as alleged state the elements of the federal drug offense, that is, that the government must "prove (1) that [defendant] distributed or dispensed a controlled substance, (2) that he acted knowingly and intentionally, and (3) that he did so other than for a legitimate medical purpose and in the usual course of his professional practice."  United States v. Rosen, 582 F.2d 1032, 1033 (5th Cir. 1978); see also United States v. Nelson, 383 F.3d 1227, 1231-33 (10th Cir. 2004) (relying on

17

§ 1306.04 as explaining the extent of a registrant's authorization to dispense drugs, the court held that a "practitioner has unlawfully distributed a controlled substance if she prescribes the substance either outside the usual course of medical practice or without a legitimate medical purpose"); United States v. Feingold, 454 F.3d 1001, 1006 (9th Cir. 2006) (elements of offense are, first, that the defendant distributed a controlled substance; second, that he acted knowingly and intentionally; and third, that he prescribed or distributed the controlled substance for other than a legitimate medical purpose and not in the usual course of professional practice).  The Indictment only seeks to hold Defendants criminally responsible for violations of federal drug laws.

Defendants have not cited to the court any case, nor has the court found a case, holding that references, either direct or implicit, to the federal regulation at issue, that is, 21 C.F.R. § 1306.04,[5] improperly subjects Defendants to criminal penalties for civil

---

[5]The regulation basically incorporates the language adopted by the Supreme Court in Moore: that for a prescription for a controlled substance to be effective it must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.  See United States v. Hayes, 595 F.2d 258, 259 (5th Cir. 1979) (noting that the "purpose of the regulation is to define the circumstances in which a physician or pharmacist . . . may nevertheless be held to have violated" section 841(a)(1), the court stated, "A registered doctor or pharmacist is exempted from § 841's proscription only when he acts in the normal course of his professional activities.   The challenged regulation merely restates the Court's conclusion in Moore.").

18

misconduct.  In fact, the decisions found by the court uniformly reject arguments made by defendants attacking indictments similar to the one in this case.  See, e.g., United States v. Rottschaefer, 178 Fed. Appx. 145, 146-48 (3rd Cir. April 27, 2006) (citing to § 1306.04 as establishing the basis for *criminal liability* under the statute, the court rejected the defendant's argument that, because of the reference to the "no legitimate medical reason," he was improperly tried and convicted under a medical malpractice or negligence standard); United States v. Ogle, 201 Fed. Appx. 979, 980-81 (5th Cir. October 9, 2006) (the court rejected the defendant's contention that the indictment was an attempt to "impermissibly 'bootstrap' a violation of 21 C.F.R. § 1306.04(a)," allegedly a civil regulation, "into a criminal offense[,]" stating that § 1306 is not a civil regulation but "an interpretative one that defines the circumstances subjecting practitioners to criminal prosecution[,]" and stating that the fact the elements to prove violations of 841 and 846 "also encompass facts sufficient to prove a violation of § 1306.04(a) does not invalidate the indictment");  Rosenberg, 515 F.2d at 196-97 (rejecting the defendant's contention that, because indictment cited to language in regulation, he was convicted of violating a regulation, § 1306, instead of a criminal statute); United States v. Hoffman, 2006 WL 3691487, *4-5 (D. Me. December 12, 2006) (rejecting the defendant's contention that indictment was unconstitutionally

19

vague and ambiguous because it allegedly based criminal liability under CSA on

violations of medical board regulations cited to in indictment and finding that evidence

of violations of such regulations, while not determinative, are relevant to the jury's

assessment of what constitutes legitimate medical purpose and the usual course of

professional practice).

Implicit in these decisions is the conclusion that § 1306.04(a) constitutes a valid

enactment of the authority delegated to the Attorney General by defining what

constitutes a lawful prescription for a controlled substance.  In fact, the Seventh Circuit

Court of Appeals has explicitly rejected the argument made by Defendants in this case.

In Green, the court stated:

> In our view, the challenged regulation has been validly enacted and does
> not expand the criminal statute.  Section 841(a)(1) makes it unlawful to
> dispense or distribute controlled substances "except as authorized by this
> subchapter."  21 U.S.C. § 822(b) provides that registrants are allowed to
> dispense controlled substances "to the extent authorized by their
> registration and in conformity with the other provisions of this
> subchapter."  Two of the provisions of the subchapter are 21 U.S.C. § 821
> and § 871(b).  Section 821 provides that "[t]he Attorney General is
> authorized to promulgate rules and regulations . . . relating to the . . .
> control of the . . . distribution, and dispensing of controlled substances."
> Similarly, section 871(b) provides that "[t]he Attorney General may
> promulgate . . . regulations . . . for the efficient execution of his functions
> under this subchapter."  It is pursuant to that authority that 21 C.F.R. §
> [1306.04(a)] was promulgated.  Thus, it is clear that the prescriptions
> involved in the present cases were not effective because they were not

> issued for a legitimate medical purpose.  The exemption from section 841(a) is applicable only if the action of the practitioners is authorized. Since there was no lawful prescription ever written, it follows that section 829 has not been complied with and the dispensing of controlled substances in these cases has not been authorized.  This interpretation does not expand the meaning of section 841(a), but rather seeks to define the exemption clause of that section.

Green, 511 F.2d at 1069-70 (citations omitted); accord Nelson, 383 F.3d at 1233 (noting that the defendant-registrant was charged with a violation of § 841(a)(1), making it unlawful to dispense a controlled substance except in conformity with the subchapter, and that § 822(b) only allows registrants to dispense within the confines of their registration and within the provisions of the subchapter, the court stated that § 1306.04(a) defines the "exact extent of the authorization").

Likewise, courts have routinely rejected contentions that the language of § 1306.04(a) is unconstitutionally vague and fails to give notice.  See, e.g., DeBoer, 966 F.2d at 1068-69 (finding that the language in § 841 and § 1306 "clearly defines the [registrant's] responsibilities that give rise to conduct that constitutes an unlawful distribution of a prescription drug"); United States v. Henry, 727 F.2d 1373, 1378 (5th Cir. 1984) ("The regulation gives 'fair notice that certain conduct is proscribed.'") (citation omitted); Rosenberg, 515 F.2d at 197-98 (the court rejected vagueness challenge to phrase, "in the usual course of professional practice," noting that "[t]he

21

ease and consistency with which courts have interpreted this language convinces us that it is not vague"").

Against this long and uninterrupted line of legal authority, the Defendants offer a recent Supreme Court case, <u>Gonzales v. Oregon</u>, in support of their arguments.  The problem for Defendants is that the decision relied on is inapposite to the facts before this court and to the conduct alleged in the Indictment, and the decision neither explicitly nor implicitly overrules the legal precedent cited *supra*.  In <u>Gonzales v. Oregon</u>, the Supreme Court stated with clarity the only question addressed by the Court: "whether the Controlled Substances Act allows the United States Attorney General to prohibit doctors from prescribing regulated drugs for use in physician-assisted suicide, notwithstanding a state law permitting the procedure."  546 U.S. at _, 126 S. Ct. at 911.  In 1994, the State of Oregon legalized assisted suicide and exempted "from civil or criminal liability state-licensed physicians who, in compliance with the specific safeguards in [the act], dispense or prescribe a lethal dose of drugs upon the request of a terminally ill patient."  <u>Id.</u>  In November 2001, the Attorney General issued an "Interpretative Rule" addressing "the implementation and enforcement of the CSA" with respect to the Oregon law.  The rule "determines that using controlled substances to assist suicide is not a legitimate medical practice and

22

that dispensing or prescribing them for this purpose is unlawful under the CSA."  The Court addressed the validity of that, and only that, rule.  Id.  This court fails to see how the validity of that rule, which has no impact on the prosecution of Defendants, has any relevancy to the charges before this court.[6]

The concern, as the court sees it and as the court believes the Supreme Court saw it, with the interpretive rule at issue in Gonzales v. Oregon, was that the Attorney General took his authority one step too far: he personally attempted to decide what specific practice of medicine was "other than for a legitimate medical purpose" or "not in the course of professional practice."  In this way, the Attorney General overstepped his authority:  he not only acted as prosecutor but as the jury.  In no way has the Government in this case exceeded its authority, which is to bring criminal charges based on an accepted interpretation of the CSA and of a regulation validly promulgated defining the exemption for registrants.  To answer the Supreme Court's question in Gonzales v. Oregon: In the case before this court, the jury will "decide[ ] whether [the]

---

[6]The court also notes that, even if the instant case relied on the issuance of an "interpretative regulation" dictating that the internet sale of controlled substances violated § 841, there is no law, rule or regulation in the State of Georgia that would be in conflict, as was true in the case before the Supreme Court.  In fact, it appears that the pertinent laws, rules and regulations in Georgia would be in agreement with any such interpretative regulation.  [Doc. 1, Count One, ¶¶ 16-17].

particular activity [as charged against Defendants] is in 'the course of professional practice' or done for a 'legitimate medical purpose.'?"  Id. at __, 126 S. Ct. at 915.[7] The decision in Gonzales v. Oregon does not disturb the decades of legal precedent authorizing the charges brought in the instant indictment.  See Prejean, 429 F. Supp. 2d at 803 (rejecting the defendants' arguments that Gonzales v. Oregon modified the case law directed at prosecutions of registrants under the CSA); United States v. Edwin, 2006 WL 763653, *5 (N.D. Ill. March 22, 2006) ("the holding in Gonzales did not effect the validity of the CSA's provisions or the regulations that are at issue in the instant action").

Defendants' legal challenges to the application of §§ 841 and 846 to the conduct alleged in the Indictment, as defined by § 1306.04(a), fail.  And, to the extent that Defendants' legal contentions rest on analysis or review of the factual allegations in the indictment or to potential evidence to be introduced at trial by seeking this court's

---

[7]In discussing the statutory provisions in the CSA relating to prescribing controlled substances and the implementing regulation, § 1306.04(a), the Supreme Court noted that, while CSA and the regulation define what constitutes a legitimate prescription, there is "little or no instruction on a central issue in this case: Who decides whether a particular activity is in 'the usual course of professional practice' or done for a 'legitimate medical purpose'?", and the Court's answer was, at least in a case where a state had enacted laws to the contrary, not the Attorney General acting unilaterally.  Id. at __, 126 S. Ct. at 915-16 & 925.

24

determination as to whether the alleged conduct falls within the proscriptions of §§ 841 or 846 or is sufficient to convict, the court declines to engage in that analysis.  A motion to dismiss is a not proper vehicle by which to determine if the evidence is sufficient for a finding of guilt nor to challenge the factual averments in an indictment. See Salman, 378 F.3d at 1269 (". . . it is not for the courts to filter which criminal cases may reach the trial stage by reviewing the proffered evidence in advance"); Ayarza-Garcia, 819 F.2d at 1048; Torkington, 812 F.2d at 1354; Ferguson, 142 F. Supp. 2d at 1353-54.

###  c.    Conclusion

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendants' motions [Docs. 79, 93, 96, 104, 113, 135, 152, 153] to dismiss Counts One through Thirty-One of the Indictment be **DENIED**.

## II.   Motions For Disclosure of Grand Jury Materials

Defendant Hoang filed a motion [Doc. 76] seeking disclosure of grand jury materials pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii) alleging "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury. . . ." According to Defendant Hoang, Count One of the Indictment, alleging a conspiracy to violate the federal drug laws pursuant to 21 U.S.C. § 846, is subject to dismissal because the Indictment refers to "State Laws" as being violated by Defendants when, in fact, the reference in the Indictment is really to state medical board rules, and he asserts that he is entitled to know how the grand jury was instructed on the alleged discrepancy.  [Doc. 76].  Defendant Andries [Doc. 115], Defendant Hollis [Doc. 121], Defendant Rashid [Doc. 129], and Defendant Smith [Doc. 132] formally adopted the motion for disclosure of grand jury materials, and the court allowed Defendants Stoufflet and Sobert to adopt the motion by not exercising the opt-out procedure established by the court.[8]  The Government opposes the motion for disclosure of grand jury materials asserting that Defendants have not carried their burden of demonstrating a particularized need for the information.  [Doc. 149 at 32].

---

[8]See footnote 2, *supra*.

26

Defendants contend that they are entitled to know what instructions the Assistant U.S. Attorney gave to the grand jury regarding the "State Laws" they allegedly violated resulting in them being indicted for a federal drug conspiracy as alleged in Count One of the Indictment. [Doc. 76]. Defendants apparently contend that if the prosecutor did not correctly inform the grand jurors that the "State Laws" referenced in the Indictment were in fact rules of the state medical board, there are grounds for dismissal of the Indictment. [Id.].

The district court for the Southern District of New York succinctly set forth the law regarding disclosure of grand jury materials based on alleged grounds for dismissal of the indictment:

> As the Supreme Court has explained, "an indictment returned by a legally constituted and unbiased grand jury . . . is enough to call for trial of the charge on the merits" and is not subject to challenge based on the sufficiency of the evidence presented to grand jurors. Although a court can dismiss an indictment obtained through prosecutorial misconduct or error, it may not do so unless errors in the grand jury proceeding prejudiced the defendant by "substantially influenc[ing] the grand jury's decision to indict" or by creating "grave doubt that the decision to indict was free from such substantial influence." Further, because the "proper functioning of the grand jury system depends on the secrecy of the grand jury proceedings," a party may obtain disclosure of grand jury transcripts under Rule 6(e) only by "a strong showing of particularized need" that outweighs the need for continued secrecy.

27

United States v. Stein, 429 F. Supp. 2d 633, 639-40 (S.D.N.Y. 2006) (quoting Bank of Nova Scotia v. United States, 487 U.S. 261, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988); United States v. Sells Eng'g, Inc., 463 U.S. 418, 103 S. Ct. 3133, 77 L. Ed. 2d 743 (1983); Douglas Oil Co. of Cal. v. Petrol Stops Northwest, 441 U.S. 211, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979); Costello v. United States, 350 U.S. 359, 76 S. Ct. 406, 100 L.Ed. 397 (1956)); see also United States v. Cosme, 134 Fed. Appx. 391, 392-93 (11th Cir. June 10, 2005) (an indictment may only be dismissed for errors in the grand jury if the errors prejudiced the defendant, and it must be established that the errors substantially influenced the decision to indict or that there is a "grave doubt" that the decision to indict was free from the influence of the errors); United States v. Burke, 856 F.2d 1492, 1495-96 (11th Cir. 1988) ("A defendant's effort to obtain grand jury materials can only succeed with a showing of 'particularized need[,]'" which is not established "by a general allegation that grand jury materials are necessary for preparation of a motion to dismiss.").

Courts have also concluded that the general rule that an "indictment 'will not be the subject of independent scrutiny and is given a presumption of regularity[, ]' . . . is 'just as applicable to a challenge of inadequate instructions as inadequate evidence' and that the 'mere speculation of irregularity is not enough to entitle the defendant to

28

disclosure of grand jury material.'" <u>United States v. Smith</u>, 2004 WL 784521, *2 (W.D. Tenn. January 24, 2004) (citations omitted); <u>see also</u> <u>United States v. Hart</u>, 513 F. Supp. 657, 658 (E.D. Pa. 1981) (same). And, even if a defendant establishes that erroneous instructions were given to a grand jury, this fact does not automatically invalidate the indictment; "[t]he defendant still must demonstrate the erroneous instructions created 'grave doubt' that the decision to indict was free from the substantial influence of such violations." <u>United States v. Espy</u>, 23 F. Supp. 2d 1, 9-10 (D.C.C. 1998)

In this case, the alleged prosecutorial misconduct or error before the grand jury, as the court understands Defendants' contention, would be the prosecutor's failure to correct the "misstatement" in the Indictment that referred to state medical board rules as "State Laws." [Doc. 76]. However, assuming *arguendo* that the reference to "State Laws" was erroneous and that the grand jury was not so informed, Defendants are not entitled to grand jury materials because this "error" would not constitute a ground upon which the Indictment may be dismissed. <u>See</u> Fed. R. Crim. P. 6(e)(3)(E)(ii). There is no showing that this alleged "error" prejudiced Defendants quite simply because they are not charged in the Indictment with violating any state laws, rules or regulations but with a violation of 21 U.S.C. § 846, the federal drug conspiracy statute. There is no

29

contention that any improper instructions were given regarding the statute, § 846, charged in Count One.  See Espy, 23 F. Supp. 2d at 10 (because "the defendant has not demonstrated that any sufficiently persuasive grounds for a motion to dismiss the indictment exist[, f]ailure to instruct the grand jury on facts deemed not essential elements under the [provision at issue] does not constitute grounds for disclosure of the grand jury minutes").  And, this court has already considered and rejected Defendants' motions to the dismiss the Indictment, which included the allegations that Defendants were improperly charged with violations of state law which were in fact medical board regulations.  Accordingly, Defendants cannot show a particularized need for the grand jury materials to assist them in filing a motion to dismiss on this ground.  See United States v. Richards, 925 F. Supp. 1097, 1108-09 (D.N.J. 1996) (noting that the defendant could not establish basis for disclosure of instructions to grand jury pursuant to Rule 6(e)(3)(E)(ii) because court had rejected the defendant's legal theory upon which instructions, if given, would have been based).

For these reasons and cited authority, the court **DENIES** Defendants' motions [Docs. 76, 115, 121, 129, 132] for disclosure of grand jury materials.

30

### III.    Motions to Strike Surplusage

Defendant Sobert has moved to strike pursuant to Fed. R. Crim. P. 7(d) identified paragraphs from the Indictment as prejudicial surplusage.   [Doc. 82]. Defendants Andries [Doc. 112], Defendant Hoang [Doc. 107], Defendant Hollis [Doc. 119], Defendant Rashid [Doc. 127], and Defendant Smith [Doc. 138] formally adopted the motion to strike surplusage, and the court allowed Defendant Stoufflet to adopt the motion by not exercising the opt-out procedure established by the court.[9]   Defendants contend that the identified paragraphs, numbered 16, 17, 27, 28, 30, 35 and 38, are prejudicial and misleading and do not constitute elements of the offense.  [Doc. 76]. The Government opposes the motion to strike, arguing first, that resolution of the motion should be deferred until close of evidence at trial, or in the alternative, that the motion should be denied.  [Doc. 149 at 28].

Fed. R. Crim. P. 7(d) "authorizes the Court to strike surplusage from an indictment on motion of the defendant."  However, as pointed out by the Government, "[a] motion to strike surplusage from an indictment should not be granted 'unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. . . .  [T]his is a most "exacting standard.'"  United States v. Awan, 966

---

[9]See footnote 2, *supra*.

F.2d 1415, 1426 (11th Cir. 1992) (citations omitted).  And, as the Government requests,

"[t]he Court may reserve ruling on a motion to strike surplusage until hearing the

evidence and determining its relevance at trial."  United States v. Al-Arian, 308 F.

Supp. 2d 1322, 1333 (M.D. Fla. 2004).

   Defendants contend that paragraphs 16 and 17, of the Indictment's introduction,

should be stricken because the paragraphs incorrectly claim to reference "State Laws"

but actually refer to state medical board rules and because the rules and regulations are

not elements of the offense.  [Doc. 76 at 3]. As discussed in denying Defendants'

motions to dismiss the Indictment, while Defendants are not charged with violations

of state laws or rules or regulations in the Indictment, evidence of violations of these

laws, rules or regulations may be probative of Defendants' intent to commit the

charged violations of §§ 841 and 846.  See Prejean, 429 F. Supp. 2d at 796-97

(denying motion to strike references to state medical standards because violations of

these, even if by omission, "are relevant to demonstrate criminal liability under 21

U.S.C. § 841"); Hoffman, 2006 WL 3691487 at 4 ("While violation of the Board of

Regulations is not determinative, depending on the regulation violated, on the issue of

criminal liability under the CSA, it is relevant to aid the jury in assessing what

constitutes a legitimate medical purpose and the usual course of professional

AO 72A
(Rev.8/82)

practice."). Because the evidence regarding whether Defendants' conduct conformed to these laws, rules and regulations may be relevant to the issues at trial, paragraphs 16 and 17 should not be stricken at this time.

Defendants also seek to strike from the Indictment paragraphs setting forth the alleged purpose of the conspiracy to violate the CSA and stating the manner and means by which Defendants allegedly committed the conspiracy. Defendants repeatedly state that these paragraphs should be stricken because they are not elements of the offense and are prejudicial and because they charge Defendants with conduct that is not a violation of law. [Doc. 76 at 4-5]. In paragraph 27, the Government contends that the purpose of the conspiracy was to sell controlled substances by the use of the internet and describes how Defendants allegedly maximized their profits by use of the internet to sell the drugs. The paragraph concludes by alleging that the conduct set forth explained how Defendants violated the CSA. [Doc. 1, Count One, ¶ 27]. Paragraphs 28, 30, 35 and 38 all addressed further the manner and means by which the internet and internet businesses were used by Defendants to generate the sales of controlled substances, described how the sales were conducted, and described the profits generated. All of these actions were alleged to be in furtherance of the § 846 conspiracy and to explain the manner and means by which Defendants allegedly

AO 72A
(Rev.8/82)

committed the charged offense.  [Doc. 1, Count One, ¶¶ 28, 30, 35, 38].  The

Government contends that the allegations in these paragraphs are relevant to the

charged offense and that evidence regarding these allegations will be offered at trial.

[Doc. 149 at 28-32].

        Based on the court's understanding of the charged conspiracy offense, and after

review of the cases charging registrants with violations of the CSA, it appears that the

conduct alleged in the indictment may be relevant to the determination of whether

Defendants conspired to unlawfully dispense controlled substances.  It is well-settled

that allegations in support of a charged conspiracy offense do not have to set forth

illegal activity nor, for that matter, be restricted to stating elements of the offense, in

order to be relevant and material.  See Al-Arian, 308 F. Supp. 2d at 1357 ("This Court

has reviewed the allegations in the subparagraphs and agrees with the government that,

while some of the subparagraphs do not contain illegal activity in themselves, each is

probative of other issues related to the conspiracies alleged in this case.") (citing, e.g.,

United States v. Lanier, 920 F.2d 887, 893 (11th Cir. 1991) (overt acts need not be

criminal); United States v. Morse, 851 F.2d 1317, 1320 (11th Cir. 1988) (activity

alleged in support of conspiracy charge need not be illegal in and of itself); United

States v. LaChance, 817 F.2d 1491, 1494 (11th Cir. 1987) (same)); United States v.

34

Salvagno, 306 F. Supp. 2d 258, 268 (N.D.N.Y. 2004) (rejecting the defendants' motion to strike manner and means paragraphs, which included references to state laws, because the paragraphs described the defendants' "methods of operation-methods that are intertwined with the evidence regarding the charged offenses"). Because evidence relating to the allegations in the challenged paragraphs in the instant Indictment may be relevant to the issues at trial, the paragraphs should not be stricken at this time.

The court finds that the allegedly surplus language contains allegations that may be relevant and material to the charged conspiracy. Because Defendants must prove both that the challenged allegations are not relevant as well as being inflammatory and prejudicial, the motions to strike should not be granted prior to introduction of the Government's evidence at trial. See Salvagno, 306 F. Supp. 2d at 268 ("If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken.") (internal quotations omitted).

The court, therefore, **DENIES** Defendants' motions [Docs. 82, 107, 112, 119, 127, 138] to strike surplusage with leave to renew at the close of the Government's case-in-chief.

35

IV.     Conclusion

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendants motions [Docs. 79, 93, 96, 104, 113, 135, 152, 153] to dismiss be **DENIED** and **ORDERS** that Defendants' motions [Docs. 76, 115, 121, 129, 132] for disclosure of grand jury materials be **DENIED** and that Defendants' motions [Docs. 82, 107, 112, 119, 127, 138] to strike surplusage be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

**SO RECOMMENDED AND ORDERED**, this 9th day of April, 2007.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

36